UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK GOLDBERG, on behalf of
himself and others similarly situated,

Plaintiffs,

v.

C.A. No.: 14-cv-14264-RGS

UBER TECHNOLOGIES, INC.,
RASIER LLC, & HIREASE, LLC

Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT UBER TECHNOLOGIES, INC. AND
RASIER, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING
PLAINTIFF'S AMENDED COMPLAINT AND MOTION TO STAY DISCOVERY**

In short, Plaintiff's amended complaint states a facially plausible claim to relief under the

FCRA, the MCRA, and the CORI statute, and should not be dismissed outright.  In addition, as a

directly injured party, Plaintiff has standing to bring this claim, and Defendants – here, only Uber

and Rasier – have failed to state a compelling reason to stay all discovery.

I.    **Introduction**

Plaintiff opposes Defendants' Motion for Judgment on the Pleadings Regarding

Plaintiff's Amended Complaint and Motion to Stay Discovery ("Motion for Judgment on the

Pleadings").  Although not styled as a Motion to Dismiss Plaintiff's Complaint, Defendants'

burden under Rule 12(c) and the limitations on the parties is the same, with no opportunity for

discovery.  As the Court will readily see, this bold attempt to dispose of Plaintiff's entire

complaint at the outset has no basis on the face of the pleadings or at law.

In short, Plaintiff's claims under the Fair Credit Reporting Act ("FCRA") are more than

adequate.  Yes, Plaintiff readily concedes that he received certain notices – as he so pleads in his

complaint – but Defendants' reading unfortunately ended there.  Plaintiff's claim is not that Defendants failed to give him any notices.  Rather, Plaintiff claims that the notices Defendants actually gave him were inadequate in a number of respects, a perfectly cognizable claim and not proper for a motion to dismiss.

Defendants then argue that Plaintiff failed to plead any actual damages.  Again, Defendants' reading ends too early, as Plaintiff does plead damage from Defendants' failure to provide proper and timely notices, resulting in deprivation of the benefit of those notices as well any meaningful opportunity to review the background reports prior to Defendants' unfounded determination to deny Plaintiff's engagement as a result of information contained in those reports.

Defendants then urge this Court to rule that FCRA preempts the Massachusetts mini fair credit reporting act, known as MCRA.  Defendants do so without any examination of whether the reports at issue qualify as an "investigative consumer report," a report governed by the MCRA with a different definition than the reports governed by the FCRA, and thus plausibly not preempted.  Additionally, Defendants urge this Court to dismiss the Plaintiff's MCRA claims without any further qualifications, despite the fact that Hirease, LLC, a Defendant in this action, is a consumer reporting agency.

Defendants then flatly declare that the reports do not contain any information compiled by a Massachusetts criminal justice agency.  Defendants make this statement while providing a report that indicates no criminal history for Plaintiff in Massachusetts – a virtual admission that Defendants sought such records and received information that there was no criminal history in Massachusetts, or at least that such a claim is plausible.

Defendants then urge this court to rule that Plaintiff's claim that he was seeking employment is implausible, even though the very Defendants in this case were actively litigating

the issue of whether drivers could be employees in California all the way through to summary

judgment, which Defendants were just denied. *See O'Connor v. Uber Technologies Inc., et al.*,

No. 3:13-cv-03826-EMC (N.D.Cal., March 11, 2015) Docket No. 251 (<u>denying Uber's motion</u>

<u>for summary judgment</u> and concluding that Plaintiffs are Uber's presumptive employees because

they perform services for the benefit of the company), attached as <u>Exhibit A</u>.

Lastly, Defendants turn to the Constitution and argue that Plaintiff has failed to plead

sufficient facts to plausibly support a finding that Plaintiff has standing under Article III to bring

any of these claims.  Defendants do this even though Plaintiff was the actual individual seeking

employment with Defendants and the actual individual harmed directly by Defendants' failures.

Defendants then urge this Court to stay all discovery, a request Plaintiff must oppose.

In summary, Plaintiff urges this Court to deny Defendants' efforts to dismiss Plaintiff's

Complaint, and allow discovery to proceed in a timely fashion.

## II.    Legal Standard

The standard for a rule 12(c) motion is in effect the same as that of a rule 12(b)(6) motion

for failure to state a claim. "A motion for judgment on the pleading is treated much like a Rule

12(b)(6) motion to dismiss."  *Jones v. NCO Fin. Servs.*, 2014 U.S. Dist. LEXIS 161169, 3-4 (D.

Mass. Nov. 14, 2014), citing *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).

To survive, "[the] complaint must contain factual allegations that 'raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true. . . .'" *Id.*,

citing *Perez-Acevedo,* 520 F.3d at 29.

"[A]n adequate complaint must provide fair notice to the defendants and state a facially

plausible legal claim."  *Id.*, citing *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir.

2011).  "The Court views the facts in the light most favorable to the Plaintiff."  *Id*, citing *Perez-*

*Acevedo*, 520 F.3d at 29.  "Further, the Court must 'draw all reasonable inferences in Plaintiff's

favor as the non-moving party.'"  *Id.*, citing *Petricca v. City of Gardner,* 194 F. Supp. 2d 1, 4 (D. Mass. 2002).

"Still, 'courts need not credit conclusory statements or merely subjective characterizations, but rather plaintiffs must set forth in their complaint specific, nonconclusory factual allegations regarding each material element to sustain recovery.'"  *Id.*, citing *Class v. Commonwealth of Puerto Rico,* 309 F. Supp. 2d 235, 237 (D.P.R. 2004).

"In reviewing the motion, the Court may consider the complaint, answer,  'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'"  *Id.*

**III.    Argument**

   **A.    Plaintiff's FRCA count states a claim.**

      **1.    Plaintiff pleads that both Defendants' Authorization to Acquire the Background Report and the "FCRA-Related" documents Plaintiff received were legally deficient and thus invalid.**

As stated above, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Jones v. NCO Fin. Servs.*, 2014 U.S. Dist. LEXIS at 3-4, citing *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d at 29.  In the case at bar, it is clear that the Plaintiff's FCRA claim meets this standard.

Plaintiff's FCRA claim can be divided into two main theories.  First, Plaintiff alleges that Defendants failed to obtain the proper authorization from him prior to conducting a background check.  Second, Plaintiff alleges that Defendants then failed to provide the proper adverse action notices.  Both claims are supported by the FCRA.

"The FCRA requires, in pertinent part, that prior to procuring a consumer report on an applicant for employment, an employer must: (1) provide a clear and conspicuous disclosure to each applicant in writing 'that a consumer report may be obtained for employment purposes; and

(2) obtain the applicant's authorization for the report in writing.'" *Reardon v. ClosetMaid Corp.*, 2013 U.S. Dist. LEXIS 169821, 14-15 (W.D. Pa. Dec. 2, 2013), citing 15 U.S.C. §1681b(b)(2)(A).  "Section 1681b(b)(2)(A)(i) specifies that the disclosure must be made in writing 'in a document that consists solely of the disclosure.'" *Id.*

"The FCRA does not define the term 'clear and conspicuous,' and there is little case law interpreting the term as used in section 1681b." *Id.*  Using the Truth in Lending Act ("TILA") as a guide, though, the Third Circuit "has interpreted a 'clear and conspicuous' disclosure to mean… 'in a reasonably understandable form and readily noticeable to the consumer.'" *Id.,* citing *Rossman v. Fleet Bank (R.I.) Nat. Ass'n.*, 280 F.3d 384, 390 (3d Cir. 2002).  Additionally, the Uniform Commercial Code ("UCC") "defines conspicuous as 'so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.'" *Id.,* citing U.C.C. §1-201(b)(10).

"Other courts have regarded a FCRA disclosure as being non-conspicuous where it was printed in small type, on the back of a document, when it is the same size and typeface as the terms around it, or when it is not in boldface or capital lettering." *Id.; See also, Murray v. GMAC Mortg. Corp.*, 274 Fed. Appx. 489, 490-91 (7th Cir. 2008) (disclosure was not "conspicuous" within the meaning of FCRA requirements where it appeared on backside of solicitation flyer and occupied two of ten paragraphs all in the same size type); *Cole v. U.S. Capital*, 389 F.3d 719, 731 (7th Cir. 2004) (disclosure not "clear and conspicuous" where it was made in a paragraph at very bottom of flyer, printed in font size that was no larger than six-point, and that was not set off from remainder of text in any way); *Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940, 948 (N.D. Ill. 2006) (disclosure was not "clear and conspicuous"" where notice appeared in a single paragraph at the bottom of a flyer and was printed in the smallest typeface on the page).

Defendants' Motion for Judgment on the Pleadings, however, fails even to mention the concept of a proper authorization, or that it was improper for Defendants to obtain the report absent such an authorization. Defendants simply assert that Plaintiff received the report and the FCRA Summary of Rights, and stop there. Yet, Plaintiff's Amended Complaint clearly alleges:

- In order to complete the first step, Plaintiff was required to supply an "electronic signature" on a document entitled "Background Check Terms."

- The "Background Check Terms" document appeared inside a graphical text box and the applicant was unable to view more than three lines of text, which made no mention of the applicant's rights relating to background checks.

- As a result, Uber did not have the consent required under Federal and Massachusetts law to obtain a consumer report about Plaintiff.

*See Plaintiff's Amended Complaint*, ¶¶ 19-21.

As such, it is clear that, despite the fact that the Defendants' did give some notice, the Plaintiff alleges that Defendants' attempt failed to comply with the provisions set forth in 15 U.S.C. §1681b. While Defendants may seek to minimize the clearly alleged violation of 15 U.S.C. §1681b, it is nonetheless a violation – and certainly sufficient under Rule 12.

Furthermore, Defendants' purported authorization document contains language that goes beyond the legally allowable text by adding a preamble stating: "Rasier, LLC, the entity that contracts with drivers who provide peer-to-peer transportation requested through the Uber app, is committed to safety. As part of that commitment, Rasier uses a third-party vendor to conduct a criminal background check, motor vehicle record check, and other checks. Please review the below disclosure/authorization and release." This text alone was visible to the end user on the date of Plaintiff's application and therefore the authorization was not in a form "consisting solely of the disclosure" as per Section 1681b(b)(2)(A)(i).

The Plaintiff also alleges that that the Defendants violated the FCRA by failing to provide him with an appropriate notice informing him that adverse action would be taken in whole or in

part based on a consumer report.  "The FCRA requires that an employer provide an applicant

with advance notice of the employer's <u>intention to take any adverse action</u> on the basis of

information contained in the applicant's consumer report."  *Reardon* at 32, citing 15 U.S.C.

§1681b(b)(3)(A)(i)-(ii) (emphasis added).  "The employer must also provide the applicant with a

copy of the report and summary of rights under the FCRA."  *Id.*

In their Motion for Judgment on the Pleadings, the Defendants focus on the fact that they

provided the Plaintiff with a copy of the report and a summary of his rights.  They fail to discuss,

however, if they ever informed the Plaintiff that an adverse action would be taken based on the

information contained in the consumer report – a violation of the statute.

Plaintiff's Amended Complaint clearly alleges:

- On August 4, 2014, Plaintiff received a copy of his consumer report from "uberreports@hirease.com". The email stated in part that "[t]his consumer report was used only for purposes of determining your eligibility as an independent contractor. . ." (Exhibit B, Email of uberreports@hirease.com to Mark Goldberg, Aug. 4 2014 9:36PM). A "PDF" attachment labeled "MarkGoldberg390.pdf" accompanied the email. (Exhibit C, "MarkGoldberg390.pdf" printout).

- The August 4th email also stated that "[c]urrently, a decision is pending regarding your proposal. The contents of the enclosed report are under review and are being considered with regard to your proposal."

- The August 4th email, or the "pre-decision" email, did not expressly state that adverse action against the Plaintiff was being contemplated.

*See Plaintiff's Amended Complaint*, ¶¶ 28-30.

Thus, it is clear that the Plaintiff sufficiently alleges that the Defendants did not send

him the requisite pre-adverse action notification.  Instead, Defendants send all applicants an

email informing them that a "decision is pending," conceivably in an effort to cover their bases

as to all those who apply, but failing to provide the proper notice required by the FCRA.  The

difference between the two is subtle, but meaningful.

The FCRA was carefully crafted to require employers to inform applicants not just that a decision regarding an employment application was being contemplated, but rather that an *adverse action* such as non-hiring was being contemplated on the basis of the content of such a report.  Motivated by this information, the applicant would then be incentivized to take prompt action to address inaccuracies in the background report and to assert his or her rights.  As it now stands, Defendants' notification fails to meet the spirit and purpose of the FCRA.

In their Motion for Judgment on the Pleadings, Defendants summarily ask this Court to dismiss the Plaintiff's FCRA claims because they sent the Plaintiff a copy of the consumer report and a summary of his rights under FCRA.  They do not, however, address whether they received the proper authorization to run the report or if they ever informed the Plaintiff if they were contemplating taking adverse action based on the information in the consumer report.  As such, Defendants' Motion for Judgment on the Pleadings should be denied.

**2.     Plaintiff's Amended Complaint alleges that he suffered actual damages as a result of the Defendants' violations of the FCRA.**

In their Motion for Judgment on the Pleadings, Defendants assert that Plaintiff's FCRA violation should be dismissed outright because he fails to plead any actual damages resulting from Defendants' non-compliance.  This statement, however, is untrue, because (a) there is no requirement for proving actual damages to support a claim for willful violations of the statute, rendering Defendants' motion in that regard inaccurate as a matter of law, and (b) Plaintiff nevertheless does plead actual damages.

First, it is important to note that the Plaintiff's Amended Complaint alleges violations under both 15 U.S.C. §1681n, for a willful violation of the FCRA, and 15 U.S.C. §1687o for a negligent violation of the FCRA.  In making a claim under §1681n the Plaintiff need not demonstrate actual damages.

"If a violation [of the FCRA] is negligent, the affected consumer is entitled to actual damages." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (U.S. 2007), citing §1681o(a) (2000 ed., Supp. IV). "If willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages." *Id.*, citing §1681n(a) (2000 ed.). Thus, any failure of the Plaintiff to affirmatively plead actual damages is not fatal to the Plaintiff's FCRA claim – especially as Plaintiff can simply amend the complaint, should this be necessary.

In *Safeco*, the United States Supreme Court held that "under the willful standard, reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of §1681n(a)." *Id* at 71. "While 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68.

In the case at bar, the Plaintiff's Amended Complaint states:

- Uber accepts applications for employment as drivers through its website, *partners.uber.com/drive*.

- Uber's application process is comprised of three steps. The first step requires that the applicant "Complete the FREE online background check: http://t.uber.com/bosxbc" (See Exhibit A - Email from partnersboston@uber.com to Mark Goldberg, July 22, 2014, 8:27PM, "Your UberX Application").

- In order to complete the first step, Plaintiff was required to supply an "electronic signature" on a document entitled "Background Check Terms."

- The "Background Check Terms" document appeared inside a graphical text box and the applicant was unable to view more than three lines of text, which made no mention of the applicant's rights relating to background checks.

- As a result, Uber did not have the consent required under Federal and Massachusetts law to obtain a consumer report about Plaintiff.

*See Plaintiff's Amended Complaint*, ¶¶ 17-21.

These facts clearly demonstrate that Defendants presented the Plaintiff with a disclosure that he could not even read.  It is the Plaintiff's contention that it should have been obvious to Defendants that their disclosure failed to comply with the disclosure and authorization provisions of the FCRA.  As such, it is clear that Plaintiff's Amended Complaint sets forth a statutory violation of the FCRA under 15 U.S.C. §1681n, and accordingly Plaintiff's Amended Complaint should not be dismissed.

As stated above, however, the Plaintiff's Amended Complaint also alleges violations under 15 U.S.C. §1687o for a negligent violation of the FCRA.  "Section 1681o, which creates a private right of action for negligent failure to comply with the FCRA, provides that a person who is negligent in failing to comply is liable for, 1) actual damages sustained as a result of the failure, and 2) costs of any successful action including reasonable attorney's fees." *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 340 (N.D. Ill. 2002).  Accordingly, under 15 U.S.C. §1681o, the Plaintiff needs to plead actual damages to support a claim for negligence, as opposed to simply statutory damages.

Despite the Defendants statements to the contrary, the Plaintiff did plead actual damages. Plaintiff's Amended Complaint states:

- On or about August 12, 2014, Plaintiff received an automated email from "uberreports@hirease.com" that stated "[i]n reference to your proposal to  enter an  independent  contractor  relationship, Rasier Boston, MA regrets to inform you that they are unable to further consider your proposal at this time. The decision, in part, is the result of information obtained through the Consumer Reporting Agency identified below." (See Exhibit D, Email from uberreports@hirease.com, Tue. Aug. 12, 2014, 1:21AM).

- Uber declined to hire Plaintiff on the basis of the information in the consumer report.

- Prior to declining to hire Plaintiff, Defendants did not issue a compliant pre-adverse action notice to Plaintiff.

- Plaintiff was deprived of any meaningful opportunity to review the information in the consumer report and discuss it with Uber prior to Uber's determination on his employment application.

*See Plaintiff's Amended Complaint*, ¶¶ 73-79.

In other words, Plaintiff was not hired due to the information contained in his consumer report, and Defendants' violation of the adverse action requirements of the FCRA deprived him of any meaningful opportunity to discuss this consumer report with Defendants. Then, even when Plaintiff complained, Defendants continued to ignore him.

Furthermore, Count I of Plaintiff's Amended Complaint clearly states:

- Plaintiff and members of the Federal Classes are consumers as defined by the FCRA.

- Defendants used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and members of the Federal Classes.

- Defendants violated the FCRA by failing to acquire from Plaintiff and members of the Federal Classes proper authorization prior to conducting the background check and/or did not utilize an authorization with the requisite statutory requirements.

- Defendants violated the FCRA by failing to provide Plaintiff and members of the Federal Classes, prior to taking adverse action, with notice that adverse action would be taken in whole or in part based on a consumer report.

- The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and members of the Federal Classes under 15 U.S.C. § 1681b(b)(3)(A).

- Pursuant to sections 1681n and 1681o of the FCRA, Defendants are liable for their willful and negligent violations of the Plaintiff's and members' of the Federal Classes FCRA rights, for the time period beginning two years before this action was filed for the first Federal Class and five years before this action was filed for the second Federal Class.

- WHEREFORE, Plaintiff respectfully prays for an order certifying the proposed class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Federal Classes; that judgment be entered for Plaintiff and the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. § 1681b(b)(3)(A), pursuant to 15 U.S.C. § 1681n; that judgment be entered for Plaintiff and the class against Defendant for actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award

costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other and further relief as may be just and proper.

*See Plaintiff's Amended Complaint*, ¶¶ 73-79.

In *In re Trans Union Corp. Privacy Litig*., the defendants argued that plaintiffs failed to request actual damages and as such their claims under 15 U.S.C. §1681o should be dismissed. The Court, however, held that plaintiffs' request for "such further legal and equitable relief as the court deems just," was sufficient under the FCRA, because "[t]he court construes plaintiffs' request for all legal relief to include a claim for actual damages." *In re Trans Union Corp. Privacy Litig*., at 340. Plaintiff here makes the same sufficient requests.

In the case at bar, the Plaintiff set forth his actual damages, requested actual damages under 15 U.S.C. §1681o, and requested such other and further relief as may be just and proper. Accordingly it is clear that the Plaintiff's Amended Complaint pleads a statutory violation of the FCRA under 15 U.S.C. §1681o and as such should not be dismissed.

**B.     Plaintiff's MCRA claim should not be dismissed.**

Defendants then urge this Court to rule that FCRA preempts the Plaintiff's MCRA claims. Defendants do so, however, without any examination of whether the reports at issue qualify as an "investigative consumer report."

M.G.L. c. 93, §53(a) provides, "A person may not procure or cause to be prepared an investigative consumer report on any consumer unless: (1) it is clearly and accurately disclosed in writing to the consumer, prior to requesting the consumer reporting agency to prepare the report, that an investigative consumer report commonly includes information as to the consumer's character, general reputation, personal characteristics, and mode of living, and the disclosure includes the precise nature and scope of the investigation requested and the right to have a copy of the report upon request; and (2) the consumer provides the person requesting the

report written permission to obtain the investigative consumer report prior to the person making such request to the consumer reporting agency."

Specific to this case, it is unclear from the face of the background report procured by Defendants precisely *what* information was used in its compilation and *from what sources* that information was derived. For this reason, Defendants' request to dismiss the Plaintiff's MCRA claims in their entirety is premature.

Additionally, the Defendants' Motion for Judgment on the Pleadings requests that this Court dismiss the Plaintiff's MCRA claims without any qualifications. What the Defendants fail to point out, however, is that the Plaintiff's MCRA claims were brought against all Defendants, including Hirease, LLC ("Hirease").

As stated in the Plaintiff's Amended Complaint, Hirease provided consumer reports for Uber and Rasier. In fact, on its website, Hirease states that it is a background screening company providing criminal and verifications services to clients nationwide. *See Hirease Website Printout*, attached hereto as Exhibit "B". For this reason, it is clear that Hirease is a consumer reporting agency as set forth in M.G.L. c. 93, § 50.

The majority of the provisions of the MCRA, M.G.L. c. 93, §§ 50- 68 are aimed directly at regulating consumer reporting agencies such as Hirease. For this reason, it is premature to dismiss the entirety of Plaintiff's MCRA claim.

Following discovery into whether or not Uber and Rasier obtained an "investigative consumer report", Plaintiff is amenable to dismissing Uber and Rasier from Count II of Plaintiff's Amended Complaint. Until these issues have been resolved, however, it is clear that the Plaintiff's Amended Complaint sufficiently pleads a violation of the MCRA and as such should not be dismissed.

**C.** **Plaintiff's CORI claim should not be dismissed.**

Count III of the Amended Complaint also states a cause of action.  First, the Hirease

report contains a plain and unmistakable reference to criminal background inquiries in which

felony and misdemeanor records from Massachusetts sources were utilized, even if those

inquiries revealed no information.  Second, Defendants have interspersed throughout their

application process and other communications one-sided and self-serving language that attempts

to mischaracterize the relationship between Defendants and their drivers as independent

contractors.  Defendants then point to that very language as ostensible evidence of an

independent contractor relationship.

> **1.** **Defendants' own report shows that CORI information may have been**
> **accessed in the preparation of the report.**

Plaintiff's CORI claim must survive because disposal of the claim at this juncture is

inappropriate.  Specific to this case, it is unclear from the face of the background report procured

by Defendants precisely *what* information was used in its compilation and *from what sources*

that information was derived.  Accordingly, further discovery on the process utilized by

Defendants in compiling their background reports will reveal whether and to what extent CORI

information was accessed.

Section 171A of the CORI Statute provides in relevant part:

> A person who annually conducts 5 or more criminal background investigations,
> whether criminal offender record information is obtained from the department or
> <u>any other source</u>, shall maintain a written criminal offender record information
> policy providing that, in addition to any obligations required by the commissioner
> by regulation, it will: (i) notify the applicant of the potential adverse decision
> based on the criminal offender record information; (ii) provide a copy of the
> criminal offender record information and the policy to the applicant; and (iii)
> provide information concerning the process for correcting a criminal record.

M.G.L. c. 6, ¶ 171A (emphasis added).  It should go without saying that Defendants conduct far in excess of five background checks per year (and the number probably reaches the hundreds of thousands).  Critically, however, the terminology "from any other source" could not be more clear.

Exhibit C to the Amended Complaint is a copy of the report Defendants utilized in making the decision not to hire Plaintiff.  That same exhibit makes reference to a background search conducted in "Plymouth, MA" reaching back "7+ years" for "County – Felony and Misdemeanor."  The request was evidently submitted on "7/29/2014" and returned seven days later on "8/4/2014."  *See Plaintiff's Amended Complaint*, Exhibit C.

As such, there are questions pertaining to precisely *what* materials and *from what source* those materials were accessed in the compilation and production of the Hirease background report.  These questions are not properly disposed of at this stage.  It is plain from within the four corners of the complaint that at least some type of information was accessed by Defendants.  Thus, there may be liability under the CORI.  Dismissal of the count without further factual development is therefore unwarranted.

### 2.   Defendants' Independent Contractor Argument is a Self-Serving Contrivance

Defendants claim here that the relationship between Uber and its drivers is that of an independent contractor and not that of an employee, as a matter of law.  Thus, they suggest, the CORI statute could not apply to Defendants' background check activities.  They do so, without any consideration or mention – even though the standard before the Court today is "plausibility" – of a pending decision from the Federal District Court in California, *O'Connor v. Uber Technologies Inc., et al.*, which ultimately denied Uber's motion for summary judgment, concluding that Plaintiffs are Uber's presumptive employees because they perform services for

the benefit of the company.  *See O'Connor v. Uber Technologies Inc., et al.*, No. 3:13-cv-03826-EMC (N.D.Cal.  March 11, 2015), Docket No. 251, attached as Exhibit A.

The Exhibits to the Amended Complaint referenced by Defendants demonstrate that they take as their point of departure precisely what is at issue in this case.  Presenting a table of selected language from their own carefully crafted application process and email communications, Defendants presume to be the case precisely what is at issue in this suit (and others throughout the country).  *See* Table, *Motion for Judgment on the Pleadings*, 14.

Using terminology like "applying to partner with Uber is easy," *Id.*, Defendants emphasize the "partnering" component of the relationship while minimizing the "applying" that is far more characteristic of an employment relationship.  Defendants strain to recast their application process as Plaintiff making a proposal, but even a passing examination of the allegations in the Amended Complaint indicates that Plaintiff was seeking employment, much like the Uber drivers in *O'Connor*.  Defendants rightly point out that "bald assertions and unsupportable conclusions are properly disregarded."  *See Butler v. Deutsche Bank Trust Co. Am.*, 748 F.3d 28, 32 (1st Cir. 2014).  Yet, Defendants do not perceive that this very logic applies equally to their *own* unsubstantiated assertions regarding the relationship between Uber and its drivers.  As the question whether Plaintiff was applying for employment or to "partner" as an independent contractor remains very much in controversy, dismissal of Plaintiff's CORI claim prior to resolution of this threshold issue is inappropriate.  For this reason, the Count should not dismiss Count III of Plaintiff's Amended Complaint.

**D.     Plaintiff has the requisite Article III standing to proceed with his lawsuit.**

Defendants finally ask this Court to dismiss Plaintiff's Amended Complaint because Plaintiff lacks Constitutional standing under Article III.  Notably, however, not one case cited by Defendants in support of their argument that Plaintiff lacks standing under Article III involved

claims under FCRA, MCRA or CORI. Yet, an analysis of cases brought under these statutes demonstrate that Plaintiff does have constitutional standing under the FCRA, even in the face of no judicially cognizable injury.

For example, in *Dreher v. Experian Info. Solutions, Inc.*, 2014 U.S. Dist. LEXIS 167534, 9-10 (E.D. Va. Dec. 3, 2014) the Fourth Circuit held that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Id.* citing *Warth v. Seldin*, 422 U.S. 490, 514 (1975).

Additionally, in *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498-99 (8th Cir. Mo. 2014), the Eight Circuit found standing where the party seeking review is himself, among the injured "in the sense that defendants violated *his* statutory rights."

Finally, in *Robins v. Spokeo*, 742 F.3d 409, 412-13 (9th Cir. 2014), the Ninth Circuit found standing under the FCRA without showing actual harm. With no split in any circuits, it remains unclear whether the Court will even entertain this.

Further, Defendants ignore the fact that Plaintiff has alleged additional grounds that support Article III standing independent of the statutory damages – namely actual damages as alleged above. Those failures deprived Plaintiff of timely information which could have led to Plaintiff taking different action during the course of his engagement, and thus unequivocally establish an injury in fact which is actual and concrete, connected to the challenged conduct, and which a favorable court decision would redress.

As a result, Article III standing has been established as a result of Plaintiff alleging a violation of a statutory right under FCRA as set forth in the decisions of the only circuits to address the issue and as a result of denying Plaintiff information which could have led him to take different actions.

**IV.     Discovery should not be stayed pending resolution of Defendants' Motion.**

Defendants' request for a stay pending a decision by the Court on their Motion for Judgment on the Pleadings should be denied.

"Although this court has discretion to stay discovery in an appropriate case, *see, e.g., Kleinerman v. United States Postal Service,* 100 F.R.D. 66, 68-69 (D.Mass. 1983) (dicta approving deferral of discovery until determination of preliminary questions that may dispose of case are resolved), such a stay is neither automatic or routine." *Digital Equip. Corp. v. Currie Enter.*, 1992 U.S. Dist. LEXIS 17718, 2 (D. Mass. Feb. 12, 1992); *see also, Milazzo v. Sentry Ins.,* 856 F.2d 321, 322 (1st Cir. 1988) (discussion of appropriateness of stay).

Here, Defendants have failed to meet their burden to demonstrate that this extraordinary measure is warranted. In their Motion for Judgment on the Pleadings, the Defendants have failed to address key portions of the Plaintiff's Amended Complaint, which are ultimately fatal to their Motion. As such, it is unlikely that this Court will dismiss the Plaintiff's Amended Complaint. Thus, fairness to all parties involved as well as the possible prejudice to the Plaintiff, dictates that discovery proceed in an efficient and expeditious manner.

For this reason, Defendants' request for a stay pending a decision by the Court on their Motion for Judgment on the Pleadings should be denied.

**V.     Conclusion**

For all the reasons set forth above, this Court should deny Defendants' Motion for Judgment on the Pleadings and allow this case to continue.

Respectfully submitted,

/s/ Philip J. Gordon
Philip J. Gordon (BBO #630989)
Kristen M. Hurley (BBO #658237)
GORDON LAW GROUP, LLP
585 Boylston Street

Boston, MA 02116
617-536-1800
pgordon@gordonllp.com

Michael T. Marshall (BBO # 678550)
The Marshall Law Firm
745 Atlantic Avenue, 8th Floor
Boston, MA 02111
617-903-7483
Michael@MLBoston.com

**<u>Certificate of Service</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, on March 20, 2015.

<u>/s/ Philip J. Gordon</u>
Philip J. Gordon