UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14264-RGS

MARK GOLDBERG,
on behalf of himself and others similarly situated

v.

UBER TECHNOLOGIES, INC.; RASIER, LLC; & HIREASE, LLC

MEMORANDUM AND ORDER
ON UBER TECHNOLOGIES, INC.AND RASIER LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

April 6, 2015

STEARNS, D.J.

In July of 2014, Mark Goldberg applied, through defendant Rasier, LLC, to be a driver for defendant Uber Technology, Inc.[1] The first step of the online application process required Goldberg to "[c]omplete the FREE online background check." Am. Compl. ¶ 18. Goldberg encountered a text box entitled "Background Check Terms" with the first three lines visible. The lines read:

> Rasier, LLC, the entity that contracts with drivers who provide peer-to-peer transportation requested through the Uber app, is committed to safety. As part of that commitment, Raiser uses a third-party vendor to conduct criminal background check,

---

[1] Uber operates a mobile-app crowd-sourced private transportation network.

>motor vehicle record check, and other checks.  Please review the below disclosure/authorization and release.

Opp'n at 6.  Goldberg electronically accepted the Background Check Terms and completed the application.

On July 29, 2014, Rasier emailed Goldberg two background reports compiled by defendant Hirease, LLC.  On August 4, 2014, Rasier emailed a third report to Goldberg.  The third report included a Fair Credit Reporting Act (FCRA) "Summary of Rights."  The cover email stated: "[t]his consumer report was used only for purposes of determining your eligibility as an independent contractor," and that "[c]urrently, a decision is pending regarding your proposal.  The contents of the enclosed report are under review and are being considered with regard to your proposal."  Am. Compl. ¶¶ 28-29.  The August 4 report disclosed that Goldberg faced a pending federal indictment for "conspiracy to manufacture, possess with intent to distribute and to distribute marijuana."  *Id.* Ex. C at 2.  Goldberg emailed Uber the following day (August 5, 2014), explaining that he had never been convicted of any crimes.  Uber responded that it "will certainly take the information [Goldberg] provided into consideration." *Id.* ¶ 35.

On August 12, 2014, Rasier notified Goldberg that his application had been rejected, "in part [because] of information obtained through the Consumer Reporting Agency identified below." *Id.* ¶ 36.  Goldberg

immediately asked Uber to reconsider and received two responses, one of which stated: "Uber does not employ drivers or own any vehicles. Our background checks are meant to ensure that we are connecting riders with the safest rides on the road. If at any time your circumstances change and you would like us to re-run your background check, please let us know." *Id.* ¶ 42.

Goldberg filed this putative class action in Suffolk Superior Court on October 30, 2014. His Amended Complaint alleges willful or negligent violation of § 1681b(b)(3)(A) of the FCRA (Count I), violation of the Massachusetts Consumer Credit Reporting Act (MCCRA), Mass. Gen. Laws ch. 93, §§ 50 *et seq.* (Count II), and violations of the Massachusetts Criminal Offender Record Information (CORI) law, Mass. Gen. Laws ch. 6, §§ 167-178B (Count III). Uber and Raiser removed the case to the federal district court on federal question grounds, and on March 6, 2015, moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## DISCUSSION

The standard for a motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

> "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view

3

> the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ." *R.G. Fin. Corp. v. Vergara-Nunez,* 446 F.3d 178, 182 (1st Cir.2006). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, [555] (2007), to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . ."

*Perez-Acevedo v. Rivero-Cubano,* 520 F.3d 26, 29 (1st Cir. 2008).

### *Count I – FCRA*

Defendants first contend that Goldberg lacks Article III standing to bring a FCRA negligence claim because he has no actual damages. *See Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 53 (2007) ("If a violation is negligent, the affected consumer is entitled to actual damages."). Although Goldberg claims the loss of the opportunity to become a driver for Uber, compliance with the FCRA does not guarantee a right to employment, particularly where the information given to Uber (and on which it relied) was accurate. While Goldberg provided Uber with information that he believed to be mitigating (because it was more complete), nothing in the FCRA required Uber to change its hiring policies as a result.

As a fallback, Goldberg argues that he need not plead actual harm to establish a claim of a willful violation of the FCRA. *Id.* Willfulness connotes reckless disregard, and its test combines an objective component

of reasonableness, and a subjective component of intent.  The Supreme Court has offered the following by way of explication of the test:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Id.* at 69.  Goldberg conjures up the suggestion that defendants willfully violated the FCRA by (1) failing to make a "clear and conspicuous disclosure . . . in a document that consist solely of the disclosure" in obtaining his authorization of a background check (quoting FCRA § 1681b(b)(2)(A)); and (2) failing to inform him of their intent to act adversely on his application *before* acting adversely on his application.  An explanation of these tortured arguments is required.

      Goldberg first argues that the request for an authorization to conduct a background check was not "clear and conspicuous" because the text box on the screen had to be scrolled to be seen in full.  Moreover, the text did not limit itself "solely" to the disclosure because the preamble iterated Uber's commitment to passenger safety.  Goldberg, however, concedes in his pleadings that the document was (conspicuously) entitled "Background Check Terms," and that the visible (three) lines of text informed the reader of the full scope of the background checks that would be conducted,

including a criminal background check.  *See* Opp'n at 6.  That is all that section 1681b(b)(2)(A) requires, and the inclusion of a few sensible words explaining the reason for the background check could hardly qualify as an "objectively unreasonable" act.

Goldberg's second theory that the FCRA requires advance notice of the intent to take an adverse action is based on section 1681b(b)(3)(A) of the FCRA, which provides:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates —
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

As the language of the statute makes clear,

> [t]he FCRA only requires an employer to provide a copy of the consumer report and a written description of the person's rights under the statute prior to any adverse action. . . . It does not require employers prior to taking any adverse action to advise applicants that the employer might take adverse employment action based on the consumer report . . . .

*Reinke v. Cargill, Inc.*, 2011 WL 2471739, at *4 (E.D. Wis. June 21, 2011).

*Count II – MCCRA*

The allegations of violations of the MCRAA stumble out of the gate on Goldberg's recognition that the FCRA expressly preempts the relevant state law. *See* FCRA § 1681t(b)(1)(C) (preempting "any subject matter regulated under – . . . subsections (a) and (b) of section 1681m of this title, relating to the duties of a person who takes any adverse action with respect to a consumer"). In a feat of contortion, Goldberg argues that a "consumer report" as defined by the FCRA differs from an "investigative consumer report" as defined under the MCCRA, thereby defeating federal preemption.

> The MCCRA defines an "investigative consumer report" as
>
> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

Mass. Gen. Laws Ann. ch. 93, § 50. Goldberg speculates that the reports compiled by Hirease for Uber and Rasier might actually be "investigative consumer reports" and not the more industry friendly "consumer reports" that figure in the FCRA. Mere speculation, however, does not survive the motion to dismiss standard. As the Supreme Court has emphasized, factual

allegations must "possess enough heft" "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 557.  The Amended Complaint contains no factual allegations to support a plausible inference that Hirease obtained information about Goldberg through "personal interviews with neighbors, friends, or associates."

 *Count III – Massachusetts CORI law*

The Amended Complaint faults defendants for failing to comply with the notice provisions of the CORI law.  *See* Mass. Gen. Laws ch. 6, § 171A.  The CORI law defines "criminal offense record information" as

> records and data in any communicable form compiled by a *Massachusetts* criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release.  Such information shall be restricted to that recorded as the result of the initiation of criminal proceedings or any consequent proceedings related thereto.

Mass. Gen. Laws ch. 6, § 167 (emphasis added).  Goldberg does not allege that he has a Massachusetts criminal record, and therefore there are no circumstances in which the CORI law would apply to his case.  Moreover, failure to comply with the CORI law's notice requirements does not provide Goldberg with a private right of action.  Mass. Gen. Laws ch. 6, § 171A ("Failure to provide such criminal history information to an applicant pursuant to this section may subject the offending person to investigation,

8

hearing and sanctions by the board.  Nothing in this section shall be construed to prohibit a person from making an adverse decision on the basis of an individual's criminal history or to provide or permit a claim of an unlawful practice under chapter 151B or an independent cause of action in a court of civil jurisdiction for a claim arising out of an adverse decision based on criminal history except as otherwise provided under chapter 151B.").[2]

ORDER

For the foregoing reasons, Uber and Rasier's motion for judgment on the pleadings is <u>ALLOWED.</u>  The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[2] Nor, as is the case with the FCRA, would a failure to strictly observe the CORI law's notice provisions require a company to change its hiring policies, particularly in circumstances where public safety is at issue.